**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000550**
**31-JUL-2018**
**09:11 AM**

NO. CAAP-15-0000550

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ANNA LIZA O. HA, Plaintiff-Appellant,
v.
CARE HAWAII, INC., Defendant-Appellee,
and
DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS
1-10 AND ROE GOVERNMENTAL ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 13-1-0612(GKN))


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

Plaintiff-Appellant Anna Liza O. Ha (**Ha**) appeals from the "Order Denying [Ha]'s Motion to Vacate Arbitration Final Award dated February 18, 2015" **(Order Denying Ha's Motion to Vacate)**[1] entered on July 1, 2015, in the Circuit Court of the Third Circuit (**Circuit Court**).[2]

On appeal, Ha contends that the Circuit Court erred when it refused to vacate and instead confirmed the final arbitration award because: (1) the award should have been vacated

---

[1] Hawaii Revised Statutes § 658A-28 (2016) does not authorize an appeal from an order denying a motion to vacate an arbitration award, instead authorizing appeals from an order confirming an arbitration award. However, the Order Denying Ha's Motion to Vacate expressly confirmed the arbitration award, thereby conferring jurisdiction to this court over the instant appeal.

[2] The Honorable Greg K. Nakamura presided.

as procured by fraud pursuant to Hawaii Revised Statutes (**HRS**) § 658A-23(a)(1) (2016)[3] where Defendant-Appellee CARE Hawaii, Inc.'s (**CARE Hawaii**) chief witnesses committed perjury at the arbitration hearing; (2) the final arbitration award violated public policy; and (3) arbitrator Riki May Amano (**Arbitrator**) exceeded her authority by considering and dismissing Ha's statutory Racketeer Influenced and Corrupt Organizations (**RICO**) claim.

For the reasons discussed below, we affirm.

## I. Background

CARE Hawaii provides adult mental health services through a contract with the State of Hawai'i. Ha worked as a case manager for CARE Hawaii from July 27, 2009 until her termination on September 17, 2012. Ha's duties included performing initial assessments when a client was first assigned to her, then working on a recovery plan to help the client become stable and independent. The instant appeal arises from the arbitration of a dispute regarding the termination of Ha's employment with CARE Hawaii.

### A. Underlying Circumstances

On September 13, 2011, Ha was issued a verbal warning for violating CARE Hawaii's Rules on Conduct Rule 24 (Discourtesy or rudeness) and Rule 31 (Use of abusive, profane or obscene language). The verbal warning report by Ha's supervisor, Chanelle Matsuda (**Matsuda**), indicated Ha had referred to a team leader as a "dickhead" during a conversation with CARE Hawaii's Director of Community Based Case Management, Joey Caballes (**Caballes**) and CARE Hawaii's Office Manager and Compliance Manager, Alex Kuch (**Kuch**).

---

[3] HRS § 658A-23 provides in pertinent part:

> **[§658A-23] Vacating award.** (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
> (1) The award was procured by corruption, fraud, or other undue means[.]

On February 27, 2012, Ha was issued a formal written warning for violating CARE Hawaii's Rules on Conduct Rule 2 (Insubordination). Matsuda had been directed by Caballes to provide a written warning because Ha had been insubordinate in front of the team during a team meeting where case managers had been told to reduce their case load.

In March 2012, Ha reported to Caballes regarding her suspicion that team manager, Kevin Hedlund (**Hedlund**), was approving improper billing practices by case managers. However, after her initial report, Ha did not provide more specifics.

On July 9, 2012, Ha reported to CARE Hawaii's management team that Dean Wyatt (**Wyatt**), a case manager for CARE Hawaii, had billed for a meeting with a client that never happened. After an investigation, Wyatt was terminated for billing for services he had not performed.

The following events were testified to during the arbitration proceedings:

On July 24, 2012, Ha reported to Caballes a billing by case manager Halnette Chartrand (**Chartrand**) that Ha suspected of being double billing. At the time, CARE Hawaii's process for assigning clients to case managers made it possible for two case managers to be assigned the same client. Consequently, Caballes testified that he concluded Ha's report regarding Chartrand was not a situation of false double billing because two case managers had unknowingly been assigned the same client.

CARE Hawaii case manager Lacy Purdy (**Purdy**) testified during the arbitration proceedings that on July 24, 2012, Ha used her shoulder to shove Purdy while passing her in the hallway. Purdy testified that Ha then slammed the door when she walked out of the hallway, came back in to make a comment, walked back out and slammed the door again. Purdy made a verbal report of the incident to Hedlund, Purdy's team manager.

Hedlund asked Purdy to report the incident to Matsuda. Purdy further testified that she did not believe Ha bumped into her accidentally, and that Ha did not have a bag at the time of the incident.

3

Ha testified that at the time of the incident with Purdy, she was entering the office with a heavy bag. Ha further testified that Purdy had been standing in the middle of the hallway and that her bag bumped into Purdy as she was trying to get around Purdy.

Caballes and Kuch conducted an investigation of the bumping incident. Kuch testified at the arbitration hearing that he believed he spoke with: Maria Kinsler (**Kinsler**), the CEO of CARE Hawaii, Purdy, Hedlund, Chartrand, and another administrative staff member during his investigation of the bumping incident.

As a result of the investigation, Kuch prepared a Termination Report recommending Ha's termination for Kinsler's approval. The Termination Report noted the prior written warning given to Ha on February 27, 2012, and the verbal warning given to Ha on September 13, 2011.

With regard to the bumping incident, Kuch found Ha violated CARE Hawaii's Rules of Conduct Rule 4 (Interference with others in the performance of their jobs, horseplay, or disorderly conduct while on the job or on Company premises), Rule 24 (Discourtesy or rudeness in any form or disrespect to clients or employees) and Rule 12 (Threatening, fighting or engaging in any act of physical aggression).

Kuch, Kinsler, Caballes, and Matsuda all participated in the decision to terminate Ha. Kuch testified the Termination Report was based on the general concern for health and the safety of employees and a concern that Ha was creating a hostile work environment. Caballes testified that the bumping incident was the "final straw" and was not the sole reason for Ha's termination. Kinsler testified she had not been informed about Ha's reports of false billings. Kinsler further testified that the decision to terminate Ha was based on Ha's previous actions and previous warnings.

On September 17, 2012, Ha was terminated.

4

B.    **Procedural History**

On October 31, 2013, Ha filed her Complaint with the Circuit Court, alleging: (1) violation of the Hawai'i Whistleblowers' Protection Act (**HWPA**) pursuant to HRS §§ 378-62(1)(A) and (B) (2015)[4]; (2) wrongful termination in violation of public policy; (3) a RICO claim; (4) negligent infliction of emotional distress; and (5) willful and wanton misconduct.

On February 5, 2014, CARE Hawaii filed a Motion to Compel Arbitration and Stay Proceedings pursuant to an arbitration agreement between Ha and CARE Hawaii.  At the hearing on this motion, the parties agreed to arbitrate the claims and stay all proceedings in the lawsuit.  On March 27, 2014, a Stipulation To Stay Proceedings Pending Arbitration and Order was filed.

On February 17, 2015, the Arbitrator entered an "Arbitration Final Award" denying all of Ha's claims against CARE Hawaii.  The Arbitrator found "there [was] no causal connection between Ha's termination and her reports of suspected wrongdoings by co-employees and/or CARE Hawaii."  The Arbitrator also found that "CARE Hawaii had legitimate, non-retaliatory reasons for its decision to terminate Ha's employment."

---

[4]   HRS § 378-62 provides in pertinent part:

> **§378-62  Discharge of, threats to, or discrimination against employee for reporting violations of law.**  An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
> (A)    A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
> (B)    A contract executed by the State, a political subdivision of the State, or the United States[.]

On March 27, 2015, Ha filed a motion to vacate the arbitration award in the Circuit Court.

On July 1, 2015, the Circuit Court denied Ha's motion to vacate and confirmed the arbitration award.

On July 30, 2015, Ha filed her timely appeal.

## II. Standard of Review

"We review the circuit court's ruling on an arbitration award *de novo*, but we also are mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Tatibouet v. Ellsworth, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002) (internal brackets, quotation marks, and citations omitted).

> [I]n reviewing an arbitration award, circuit courts are powerless to correct an arbitrator's findings of fact even if clearly erroneous, or an arbitrator's rulings on the law, even if wrong. See, e.g., Tatibouet v. Ellsworth, 99 Hawai'i 226, 236, 54 P.3d 397, 407 (2002) ("It is well settled that arbitration awards may not be vacated . . . if the arbitrators commit a legal or factual error in reaching its final decision."); Gadd v. Kelley, 66 Haw. 431, 443, 667 P.2d 251, 259 (1983) ("[E]ven if the arbitrators had erred ..., the court is powerless to vacate the award as long as the arbitrators' actions did not rise to the level of the grounds specified in HRS § 658-9(4)[.]"); Mars Constructors, Inc. v. Tropical Enters., Ltd., 51 Haw. 332, 336, 460 P.2d 317, 319 (1969) ("[A]ssuming that the arbitrators [ ] erred in construing the construction contract, a mistake in the application of law and in their findings of fact, this mistake is not one of the three grounds specified in HRS [§] 658-10, and the circuit court correctly ruled that it was powerless to modify or correct the award."); see also Thomas v. Trustees of Lunalilo Estate, 5 Haw. 39, 40 (Terr.1883) ("[I]t is well settled that the award, if made in good faith, is conclusive upon the parties, and that [they] can[not] be permitted to prove that the arbitrators decided wrong either as to the law or the facts of the case.") (internal quotation marks and citations omitted); Richards v. Ontai, 20 Haw. 198, 201 (Terr.1910) ("[N]either the circuit court . . . nor this court on appeal can review the findings of fact or the rulings of law made by the arbitrator any further than may be necessary to determine the questions specifically mentioned in the statute[.]").
>
> Appellate review of a motion to vacate, however, does not involve review of an arbitrator's findings of fact or conclusions of law. Rather, it involves review of a circuit court's factual findings and conclusions of law as to whether the statutorily outlined grounds for vacatur exist.

Nordic PCL Const., Inc. v. LPIHGC, LLC, 136 Hawai'i 29, 42, 358 P.3d 1, 14 (2015).

III. Discussion

    A.    **No Basis to Vacate Arbitration Award as Procured by Fraud**

        Ha contends that the arbitration award denying her claims was procured by fraud because witnesses for CARE Hawaii committed perjury during their respective testimonies at the arbitration hearing.

        In Low v. Minichino, 126 Hawai'i 99, 108, 267 P.3d 683, 692 (App. 2011), this court held that perjury can constitute a basis for vacating an arbitration award, but only in limited circumstances. In this regard, this court adopted a three-prong test set out in Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378 (11th Cir. 1988) for determining when fraud constitutes a basis for vacating an arbitration award.

> First, the movant must establish the fraud by clear and convincing evidence. Second, the fraud must not have been discoverable, upon the exercise of due diligence, prior to or during arbitration. Third, the movant must demonstrate that the fraud had a material effect on a dispositive issue in the arbitration.
>
>   .  .  .  .
>
> These elements ensure that the various policies underlying finality of arbitration awards and limited judicial review will not be eroded. By requiring clear and convincing evidence, the Bonar test places a high burden upon the movant to establish fraud. Courts may not vacate an award for mere inconsistencies in testimony. Where the alleged fraud is based on perjured testimony, the movant must establish that the witness "wilfully, knowingly, and falsely" stated some material fact under oath. Testimony that reflects an opinion or approximation as well as testimony that is not willfully false will not give rise to a potential ground for vacatur.

Low, 126 Hawai'i at 107, 267 P.3d at 691 (citations omitted) (emphasis in original).

        Ha asserts fraud by pointing to testimony in the arbitration proceeding by witnesses for CARE Hawaii which she contends was perjury. In particular, she quotes testimony by certain witnesses during the arbitration and asserts that the Arbitrator and the Circuit Court "inexplicably ignored or underplayed" certain aspects of the testimony and "disregarded and completely ignored the perjury."

Notwithstanding Ha's assertions to the contrary, she fails to establish the second prong of the <u>Bonar</u> test, that "the fraud must not have been discoverable, upon the exercise of due diligence, prior to or during arbitration." <u>Low</u>, 126 Hawai'i at 107, 267 P.3d at 691. "The second element prevents the movant from taking a 'second bite at the apple' if the fraud could have been discovered at arbitration. If the movant could have rebutted the adversary's claims or evidence at arbitration, the scales will tip in favor of preserving the award's finality." <u>Id.</u> (citation omitted). Ha's argument is essentially that it was clear from the testimony of the witnesses themselves at the arbitration that they were lying, and the Arbitrator ignored or underplayed that they were lying. Given Ha's argument, the alleged fraud, *i.e.*, perjury, was not only discoverable during the arbitration, but was allegedly obvious. Given these circumstances, Ha was fully capable of asserting the alleged fraud during the arbitration and arguing it to the Arbitrator.

Because Ha has failed to satisfy the second part of the <u>Bonar</u> test, we need not address the other two prongs of the test.

**B. Final Arbitration Award Did Not Violate Public Policy**

Ha argues the final arbitration award violated public policy and should be vacated based on <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw. 370, 652 P.2d 625 (1982), because the Circuit Court and the Arbitrator were wrong as a matter of law for denying Ha's public policy claim. For the following reasons, this argument is without merit.

In <u>Parnar</u>, the Hawai'i Supreme Court held there is a public policy exception to an employer's generally unlimited right to terminate an at-will employee. <u>Parnar</u>, 65 Haw. at 379, 652 P.2d at 631. In a subsequent case citing <u>Parnar</u>, the supreme court explained that:

> [a]bsent a clear expression of legislative intent to the contrary, we think it is both unnecessary and unwise to permit a judicially created cause of action, which is designed to promote a specific public policy in a "narrow class of cases," <u>Parnar</u>, 65 Haw. at 379, 652 P.2d at 631, to be maintained where the policy sought to be vindicated is already embodied in a statute providing its own remedy for its violation.

Ross v. Stouffer Hotel Co., 76 Hawai'i 454, 464, 879 P.2d 1037, 1047 (1994) (footnote omitted). In Ross, the supreme court recognized that the HWPA embodied a clear legislative intent to allow whistleblowers to bring a Parnar claim even though the statute provided its own remedy.[5] Id. at 464 n.11, 879 P.2d at 1047 n.11. However, even if the plaintiff brings a Parnar claim, "the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy." Parnar, 65 Haw. at 380, 652 P.2d at 631.

Here, the Arbitrator found "there [was] no causal connection between Ha's termination and her reports of suspected wrongdoing by co-employees and/or CARE Hawaii." The Arbitrator determined that Ha was not a whistleblower and "CARE Hawaii had legitimate, non-retaliatory reasons for its decision to terminate Ha's employment." The Arbitrator subsequently concluded that Ha's termination was not in violation of public policy because Ha was not a whistleblower.

The Arbitrator explained, citing Ross, 76 Hawai'i at 464, 879 P.2d at 1047, that "[m]ore importantly, Ha's claim for wrongful termination in violation of public policy fails because her remedy is found in HRS Chapter 378." The Arbitrator found "Ha's Parnar cause of action [was] duplicative of her claim and remedy under HRS Chapter 378 and therefore cannot be sustained under Hawai'i law as defined by Ross."

Although Ha asserts the Arbitrator was wrong as a matter of law for dismissing her Parnar claim, Hawai'i case law does not recognize misapplication of law as grounds for vacating

---

[5] HRS § 378-69 (2015) provides:

> **§378-69 Conflict with common law, precedence.** The rights created herein shall not be construed to limit the development of the common law nor to preempt the common law rights and remedies on the subject matter of discharges which are contrary to public policy. In the event of a conflict between the terms and provisions of this part and any other law on the subject the more beneficial provisions favoring the employee shall prevail.

an arbitration award.  See Matter of Hawai'i State Teachers Ass'n, 140 Hawai'i 381, 391-92, 400 P.3d 582, 592-93 (2017) ("where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.") (citations omitted).

Ha presents circular reasoning by asserting that the dismissal of her public policy claim is itself a violation of public policy.  We conclude the Circuit Court properly declined to vacate the arbitration award on this ground.

### C.  The Arbitrator Did Not Exceed Her Authority by Dismissing Ha's RICO Claim

#### 1.  Arbitrability of RICO Claim

Ha contends that the final arbitration award should be vacated pursuant to HRS § 658A-23(a)(4)[6] because the Arbitrator exceeded her authority by ruling on Ha's RICO claim.[7]  We disagree.

First, Ha incorrectly suggests that the U.S. Supreme Court's holding in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) precludes statutory claims from being arbitrated.  See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 264 (2009) (holding that Gardner-Denver did not preclude enforcement of an arbitration agreement that required arbitration of claims under the Age Discrimination in Employment Act of 1967).

Second, Ha argues that the plain language of HRS § 842-8(a) (2014), part of Hawai'i's RICO statute, grants the courts exclusive jurisdiction over a RICO claim.

---

[6] HRS § 658A-23 provides, in pertinent part:

[§658A-23]  **Vacating award.**  (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

.  .  .

(4) An arbitrator exceeded the arbitrator's powers[.]

[7] Ha does not argue that an arbitration agreement did not exist between the parties, nor that the RICO claim was not included in the scope of the arbitration agreement.

HRS § 842-8(a) provides:

> **§842-8  Civil remedies.**  (a) <u>The circuit courts of the State shall have jurisdiction</u> to prevent and restrain violations of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest oneself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(Emphasis added.)

However, the Hawai'i Supreme Court has previously held that where the Hawai'i RICO statute, HRS Chapter 842, is similar to the federal RICO statute, Hawai'i courts may look to the federal courts for guidance.  State v. Bates, 84 Hawai'i 211, 222, 933 P.2d 48, 59 (1997) (citing the legislative history of HRS Chapter 842); see also, Price v. Obayashi, 81 Hawai'i 171, 181, 914 P.2d 1364, 1374 (1996) ("[I]n instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance.").

18 U.S.C. § 1964, part of the federal RICO statute, provides in pertinent part:

> **§1964.  Civil remedies** (a) <u>The district courts of the United States shall have jurisdiction</u> to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(Emphasis added.)

Given the similarities between the Hawai'i and federal RICO statutes and a lack of Hawai'i case law regarding the arbitrability of RICO claims, we consider federal case law for guidance as to whether RICO claims can be arbitrated, or whether the language of HRS § 842-8(a) precludes arbitration of RICO claims.

The U.S. Supreme Court has previously held that RICO claims under 18 U.S.C. § 1964 are arbitrable. Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 242 (1987). The court in McMahon concluded there was no legislative intent to prevent enforcement of agreements to arbitrate RICO claims. Id. (concluding further that there was nothing in the federal RICO statute's text or legislative history which demonstrated legislative intent to make an exception to the Federal Arbitration Act for RICO claims). McMahon further states that "[plaintiffs] may effectively vindicate their RICO claim in an arbitral forum, and therefore there is no inherent conflict between arbitration and the purposes underlying § 1964(c)." Id. Accordingly, RICO claims could be subject to arbitration, and plaintiffs, "having made the bargain to arbitrate, will be held to their bargain." Id. (internal quotation marks omitted).

Additionally, the U.S. Supreme Court has stated that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

Based on the foregoing, we conclude Hawai'i RICO claims are arbitrable under Hawai'i law.

We additionally note that "[u]nder Hawai'i law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Cty. of Hawai'i v. UNIDEV, LLC, 129 Hawai'i 378, 394, 301 P.3d 588, 604 (2013) (internal quotation marks and citation omitted). Furthermore, whether an issue is beyond the scope of an agreement to arbitrate "depends on the wording of the contractual agreement to arbitrate." Id. (emphasis in original; citation and internal quotation marks omitted). See also Gabriel v. Island Pac. Acad., Inc., 140 Hawai'i 325, 335-36, 400 P.3d 526, 536-37 (2017) (holding that

12

the plaintiff's discriminatory retaliation claim, alleging a violation of HRS § 378-2(2), was arbitrable under an employment contract arbitration provision requiring plaintiff to "handle out of court" "any dispute concerning this Agreement[,]" and noting the strong policy favoring arbitration and that "any doubt concerning whether a dispute is covered by an arbitration agreement should be resolved in favor of arbitrability.").

The arbitration agreement between Ha and CARE Hawaii states, in pertinent part:

> I understand and agree that any claim or dispute arising out of or relating to my recruitment, hiring, employment, employment benefits, or termination from employment with CARE Hawaii shall be subject to final and binding arbitration.
>
> . . . .
>
> Claims which must be arbitrated under this Agreement include, but are not limited to any and all claims based on: . . . (13) claims for whistle-blowing or violation of public policy; (14) any claim based on state or federal statute[.]

(Emphasis added.)

Based on the language of the arbitration agreement, Ha's RICO claim falls within the broad scope of the agreement because it arises out of and is related to Ha's employment and termination.

## 2.   Standing to Bring RICO Claim

Ha also argues the Arbitrator did not have the authority to determine whether Ha had standing to raise a RICO claim because the issue of standing is for a court to decide.  In our view, Ha misinterprets the Arbitrator's decision.

According to the Arbitration Final Award, the Arbitrator granted summary judgment on Ha's RICO claim prior to the arbitration hearing.  Footnote one of the Arbitration Final Award explains that "[t]he Arbitrator found that there was no evidence to establish that [Ha] suffered any injury from the alleged racketeering and therefore, Ha lacked standing to pursue

13

the RICO claim against [CARE Hawaii] under HRS Chapter 842." The Arbitrator's decision concerned the merits of whether Ha could prevail on her RICO claim. In any event, we disagree with Ha's contention that the Arbitrator did not have authority to determine if Ha had standing to pursue her RICO claim. Given the broad language of the arbitration provision and that the RICO claim was arbitrable, addressing Ha's standing to pursue the RICO claim was within the Arbitrator's authority. See In re Grievance Arbitration Between State Org. of Police Officers, 135 Hawai'i 456, 463, 353 P.3d 998, 1005 (2015) ("In determining whether an arbitrator has exceeded his or her authority under the agreement, there should be no second guessing by the court of the arbitrator's interpretation of his or her authority so long as the arbitrator's interpretation could have rested on an interpretation and application of the agreement.") (footnote, citation and internal quotation marks omitted).

Given the above, the Arbitrator did not exceed her authority in addressing the RICO claim.

**IV. Conclusion**

Based on the foregoing, we affirm the "Order Denying [Ha]'s Motion to Vacate Arbitration Final Award dated February 18, 2015" entered on July 1, 2015, in the Circuit Court of the Third Circuit.

DATED: Honolulu, Hawai'i, July 31, 2018.

Chief Judge

Associate Judge

Associate Judge

14